UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| RONNIE DEAN AUSTIN, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. CIV-13-1089-L |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration, | ) ) ) ) |  |
| Defendant. | ) ) |  |

# REPORT AND RECOMMENDATION

Plaintiff Ronnie Dean Austin brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. United States District Judge Tim Leonard has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R.\_"). The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff's applications are before the Court following almost nine years of administrative proceedings and judicial review. Plaintiff protectively filed his

applications for DIB and SSI on May 3, 2006, alleging disability on the basis of manic depression, bipolar disorder, panic attacks, and anxiety, with a disability onset date ultimately contended to be March 24, 2004. R. 120-24, 125-28, 134-43.[1] Following initial denial of Plaintiff's applications, the assigned Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on July 24, 2008. R. 7-18, 24-51, 52-53, 55-56. Plaintiff was denied review by the SSA Appeals Council and appealed to this Court. *See* R. 1-4; *Austin v. Astrue*, No. CIV-10-800-F (W.D. Okla. filed July 28, 2010). United States District Judge Stephen P. Friot found error on one point (not re-raised in the instant appeal) and ordered the decision of the Commissioner to be reversed and remanded for further proceedings. R. 455-69. The Appeals Council in turn remanded the case to the ALJ level for possible further hearing, to ensure completion of the administrative record, and for issuance of a new decision. R. 454. Upon remand, Plaintiff appeared with counsel at a hearing conducted before a different ALJ, at which both a vocational expert and a medical expert testified. R. 368-422. The ALJ who conducted the second hearing issued a written decision denying Plaintiff's applications on March 15, 2013. R. 338-52.

---

[1] During the course of proceedings, Plaintiff's disability onset date was amended several times. *See* R. 133, 426-27, 476. During the second hearing, the ALJ asked whether Plaintiff wished to amend his disability onset date to May 3, 2006; Plaintiff's response is unclear from the hearing transcript. *See* R. 416-17. The ALJ used March 24, 2004, as the relevant disability onset date in the decision at issue herein; neither Plaintiff nor Respondent challenges this determination. R. 338. The relevant period for Plaintiff's DIB application is March 24, 2004, through Plaintiff's last insured date of June 30, 2009. *See* R. 134, 339, 343; 20 C.F.R. §§ 404.130-.132. The relevant period for Plaintiff's SSI application is May 3, 2006 (Plaintiff's application date), through March 15, 2013 (the date that the ALJ issued her decision). *See* R. 134, 352; 20 C.F.R. §§ 416.335, 416.501.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date through the date of the decision. R. 341; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of panic attacks with agoraphobia and major depressive disorder. R. 341-44; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 344-45; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 345-51; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is able to understand, remember, and follow simple instructions and is able to sustain an ordinary routine without special supervision. The claimant is able to superficially interact and work with others, but cannot perform teamwork dependent activities and cannot interact appropriately with the general public. The claimant is able to respond appropriately to changes in the work setting, but needs flexibility in pace with no rigid pace requirements. The claimant is able to sustain concentration necessary to perform unskilled work.

R. 345; *see* 20 C.F.R. §§ 404.1567, 404.1569a, 416.967, 416.969a. The ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work, which

3

included one semiskilled job, as well as several previous jobs that were not performed at the level of "substantial gainful activity." R. 351; *see* 20 C.F.R. §§ 404.1565, 404.1572, 416.965, 416.972.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 351-52. Taking into consideration the VE's testimony regarding the degree of erosion to Plaintiff's unskilled occupational base caused by Plaintiff's nonexertional limitations at all exertional levels, the ALJ concluded that Plaintiff could perform unskilled occupations such as cleaner and laundry worker (both medium-exertion) and laundry folder (light-exertion) and that such occupations offer jobs that exist in significant numbers in the national economy. R. 351-52; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from March 24, 2004, through the date of the decision. R. 352; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff's request for review of this decision by the Appeals Council was denied on September 6, 2013. R. 323-27. Thus, the March 15, 2013, determination of the ALJ is the Commissioner's final decision on Plaintiff's DIB and SSI applications. *See* 20 C.F.R. §§ 404.981, 416.1481. Thereafter, Plaintiff commenced this appeal.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

4

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff challenges the ALJ's reliance upon the hearing testimony of an impartial medical expert (or "ME") in reaching her conclusion that Plaintiff was not disabled. *See* Pl.'s Br. (Doc. No. 11) at 6-19; Pl.'s Reply Br. (Doc. No. 15) at 1-5.[2] In determining Plaintiff's RFC, the ALJ summarized in significant detail the testimony of psychologist Glenn F. Sternes, Ph.D., who testified as the ME at the hearing on Plaintiff's

---

[2] With the exception of the administrative record, references to documents filed electronically in this Court use the ECF pagination.

applications. *See* R. 348-50. In his testimony, Dr. Sternes discussed numerous of Plaintiff's medical records in detail and was questioned by the ALJ and by Plaintiff's attorney. *See* R. 382-96, 398-406. The ALJ's RFC determination (excerpted above) largely aligned with Dr. Sternes' opinion, as the ALJ made clear:

> [Dr. Sternes] found that a hypothetical individual with the claimant's profile is able to perform simple tasks with routine supervision; relate to his supervisors and peers on a superficial work basis, but cannot relate to the general public; and, can adapt to work situations. Dr. Sternes testified such an individual . . . would be able to perform in an environment without a rigid pace or teamwork[-]dependent activities.
>
> . . . .
>
> As an impartial licensed psychologist, the findings and opinion of Dr. Sternes have been given substantial weight and consideration as consistent with the treating medical records, objective medical evidence, and overall longitudinal record. Accordingly, the same have been reflected in the determination of the claimant's [RFC].

R. 350; *see also* R. 390-92 (Dr. Sternes testifying that Plaintiff could adapt to work situations when there is "flexibility in pace" and no contact with the general public).

Plaintiff contends that the ALJ's decision to give "substantial weight" to Dr. Sternes' findings and opinion fatally undermines the ALJ's RFC determination due to various flaws and shortcomings in Dr. Sternes' testimony. *See* Pl.'s Br. at 11-19. This argument is at its core a contention that the ALJ's RFC determination is not supported by substantial evidence in the record. *See id.*; Pl.'s Reply at 2-4. Thus the undersigned applies the substantial-evidence standard outlined above. *See supra*; *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

I.

First, Plaintiff suggests that Dr. Sternes' opinion was tainted by irrelevant statements and analogies made during his testimony. At the hearing, Dr. Sternes several times analogized Plaintiff's mental health issues to other types of problems and also discussed generally available treatment for mental-health disorders such as Plaintiff's. *See* R. 389-90, 396, 398-400, 402. Plaintiff criticizes this aspect of Dr. Sternes' testimony as largely lacking relevance to Plaintiff's disability case. While Plaintiff primarily argues that these statements should be disregarded, he also asserts that the statements render other, relevant portions of Dr. Sternes' testimony "senseless" and lacking in credibility. *See* Pl.'s Br. at 12-16.

An ALJ generally may request and consider opinions from an ME "on the nature and severity" of a claimant's impairments. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii). An ME is "an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion." *Richardson v. Perales*, 402 U.S. 389, 396 (1971). The ME serves as "a neutral adviser," "used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." *Id.* at 408. The ALJ is required to evaluate an ME's opinions, including those regarding a claimant's RFC, in the same manner the ALJ would evaluate other medical opinions, and therefore the ME's nonexamining opinion generally (but not invariably) is given less weight than opinions of treating or examining sources. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); *see id.* §§ 404.1527(a)-(d), 416.927(a)-(d); SSR

96-6p, 1996 WL 374180, at *2-3, *4 (July 2, 1996); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Here, Dr. Sternes' testimony included discussion of the history and efficacy of mental health treatment, occasionally without focus on Plaintiff's particular circumstances. The statements with which Plaintiff takes particular issue—for example, an explanation that someone who isolates, rather than acclimatizes, himself to something he fears may reinforce that fear; a comparison of Plaintiff's ability to concentrate with that of children with ADHD—do not significantly discredit Dr. Sternes' opinions. *See* R. 390, 402. When read in context of Dr. Sternes' entire testimony, the challenged statements were either immaterial asides or attempts to illustrate by analogy Dr. Sternes' opinion as to the "nature and severity" of Plaintiff's mental health issues, viz., his opinion that Plaintiff could function in a certain type of workplace. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); R. 388-96, 398-406. Plaintiff does not demonstrate that the challenged statements render the remainder of Dr. Sternes' extensive testimony unworthy of belief.

II.

Second, Plaintiff attacks Dr. Sternes' testimony regarding Plaintiff's ability to concentrate as improperly minimizing the significance of Plaintiff's consistently low scores of global assessment of functioning, or "GAF." *See* Pl.'s Br. at 16-17; Pl.'s Reply at 3-4. "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quoting Am. Psychiatric Ass'n,

*Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR")). A GAF score of 41-50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school function (e.g., no friends, unable to keep a job).'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (quoting DSM-IV-TR at 34). A GAF score of 51-60 indicates: "'Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Id.* (quoting DSM-IV-TR at 34). Although some printed references to Plaintiff's GAF are not decipherable on the face of the documents, the record reflects that Plaintiff has been assessed with GAF scores ranging from 40 to 54 and that his score generally increased during the years 2007 to 2012. *See* Pl.'s Reply at 3 n.2; R. 290, 305, 559, 566, 605, 607, 609, 611, 613, 615, 617, 625, 627.

As an initial matter, Plaintiff has not shown any error in the *ALJ's* consideration and analysis of Plaintiff's GAF scores. Plaintiff does not directly attack the ALJ's treatment of the GAF scores; rather, Plaintiff only indirectly attacks the ALJ's RFC determination to the extent that this determination relies upon Dr. Sternes' treatment of the GAF scores. The ALJ indisputably considered Plaintiff's GAF scores, both in the context of Dr. Sternes' explanation of those scores and as separately reflected in the medical evidence. *See* R. 341, 347, 348, 349. Independently of her discussion of Dr. Sternes' testimony, the ALJ noted that Plaintiff has received GAF scores that "have trended between 48 and 52" but held that "the diagnosis and assessment of a mental

9

impairment under the criteria found in the DSM-IV are not entitled to great weight in making disability determinations." R. 347; *see also* R. 347-48 (noting that post-remand medical records have been "closely reviewed"). Thus, this is not a case where evidence provided by medical sources was ignored by the ALJ. *Cf. Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (upholding denial of benefits where ALJ did not specifically reference the relevant GAF scores but "it seem[ed] clear that he considered them").

Dr. Sternes' testimony reflects that he was aware of Plaintiff's GAF scores, as well as their consistent nature, but did not consider the scores to be dispositive of whether Plaintiff was able to work. R. 388-89, 392-93, 396, 404-06. Plaintiff has not shown that Dr. Sternes' view was improper as a general matter or unreasonable in light of the medical evidence in this case. While GAF scores "must be considered with the rest of the record," such scores alone do not establish inability to work. *Butler*, 412 F. App'x at 147; *see Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (noting that a claimant's impairment reflected in a low GAF score "might lie solely within the social, rather than the occupational sphere"); *cf. Camp v. Barnhart*, 103 F. App'x 352, 354 (10th Cir. 2004) (holding that a GAF score of 50, without evidence it impaired the claimant's ability to work, did not establish an impairment). Here, Dr. Sternes explained the reasons that he did not find Plaintiff's GAF scores determinative of whether Plaintiff could perform certain functions. Dr. Sternes also explained the limitations that he believed result from Plaintiff's mental health impairment based on the medical evidence, including but not limited to the GAF scores. Plaintiff does not demonstrate that either Dr. Sternes or the ALJ failed to properly evaluate Plaintiff's GAF scores.

III.

Third, Plaintiff argues that Dr. Sternes' opinion regarding Plaintiff's ability to concentrate was not entitled to credence because Dr. Sternes was unaware that Plaintiff had been prescribed medication and had complained of concentration issues during his treatment. *See* Pl.'s Br. at 15-16. At the hearing, the following exchange occurred:

> [Plaintiff's Attorney]: Now, getting back to that RFC, what about the person's concentration, the person we're dealing with? I know you did say simple instructions and – but what about the person's ability to say, maintain attention concentration?
>
> [Dr. Sternes]: I don't see anything that would come to indicate, you know, and lead to problems with concentration, short concentration spans.
>
> [Plaintiff's Attorney]: Well, I think that seems to be in the notes, the progress notes. The claimant's, one of his complaints was concentration, is that correct?

R. 394. The transcript reflects that at that point, the ALJ, Plaintiff's attorney, and Dr. Sternes all reviewed some of Plaintiff's mental health treatment records. *See* R. 394, 559-70. When the testimony continued, Dr. Sternes opined: "I would expect that there might be some concentrational difficulties in a person with anxiety because anxiety is just breaking through that[, which] can cut you away from the task at hand." R. 394.

Immediately after that statement, Dr. Sternes discussed potential benefits that Plaintiff might experience from mental health medication and counseling. *See* R. 394-95 ("And that's one of the things about good medication is that they can help you."). The following exchange then occurred:

> [Plaintiff's Attorney]: [A]re your answers based on some sort of optimum treatment or based on the treatment that [Plaintiff has] received?
>
> [Dr. Sternes]: Well, I really don't have anything on the treatment he's received.

11

[Plaintiff's Attorney]: Well, there's --

[Dr. Sternes]: Most of this has been without medication, but he should do better with medication.

[Plaintiff's Attorney]: No, he's had medication.

[Dr. Sternes]: Well, I mean, sometimes he's been out [INAUDIBLE] that way.

[Plaintiff's Attorney]: Well, yeah, but he's had Zoloft, he's had Lexapro, tegretol, Ambien, Vistaril, Klonopin, Seroquel. A lot of the records are from the medication clinic.

[Dr. Sternes]: Okay.

[Plaintiff's Attorney]: Almost everything is North Rock Medication Clinic. From 2007 through Exhibit 13F, those are all medication . . . . They're still seeing him. He's taking those medications. They're still seeing him.

R. 395-96; *see* R. 571-627 (North Rock Medication Clinic treatment records from May 2008 to January 2013).

Plaintiff's attorney subsequently asked Dr. Sternes to clarify his opinion:

[Plaintiff's Attorney]: [L]et me go back to that concentration question[.] [B]ased on the record, is [Plaintiff] a person, not if he had talk therapy and everything else, but if he, as his condition is, is this somebody who would be able to maintain concentration on a sustained basis?

[Dr. Sternes]: . . . . [T]his is much like those kids with attention deficit, hyperactivity disorder who have attention and concentrational problems, and if they're interested in a school subject, they can get As in it, and if they're not interested, it goes down the toilet and they get Ds and Fs. So that if a job can be found for the claimant that he's interested in[,] that is supportive[,] that allows him some of these fluctuations in attention, he may well see that it's a safe place, that he can do better, and his attention will improve.

[Plaintiff's Attorney]: But by the same token, he may not.

[Dr. Sternes]: Well, certainly. . . . .

. . . .

[Plaintiff's Attorney]: . . . . [W]ith the picture that we have from the current records, is this a person [who is] going to be able to function day in and day out in a job?

[Dr. Sternes]: I don't see anything to counter-indicate that.

R. 402-03.

Plaintiff is correct that Dr. Sternes at different points in his testimony made statements that arguably imprecisely characterized the evidence regarding Plaintiff's difficulty maintaining concentration and Plaintiff's treatment through the use of medication. According to Plaintiff, these statements undermine the ALJ's determination that Dr. Sternes' findings and opinions were consistent with the treating medical records and objective medical evidence. *See* Pl.'s Br. at 16, 18-19; R. 350. The undersigned disagrees. Considering these portions of testimony in context, the totality of the testimony was sufficient to support those conclusions on which the ALJ relied.

With respect to records noting Plaintiff's complaints about maintaining concentration, the fact that Dr. Sternes' memory had to be refreshed or corrected as to those records does not, by itself, render his conclusions infirm. Dr. Sternes' testimony reflects that he was aware of Plaintiff's mental health history. R. 383-88. After summarizing that history, Dr. Sternes opined that Plaintiff experienced concentration-related limitations resulting from mental health impairment(s). R. 387-88, 390-92 (stating that Plaintiff has moderate limitation in concentration, persistence, and pace and is only able to perform jobs that permit flexibility in pace).[3] When pointed to the records in question, Dr. Sternes agreed with Plaintiff's attorney in concluding that he "would expect that there might be some concentrational difficulties in a person with anxiety."

---

[3] In her RFC determination, and reflective of Dr. Sternes' testimony when examined by Plaintiff's attorney, the ALJ added to these limitations that Plaintiff is only "able to sustain concentration necessary to perform unskilled work." R. 345.

13

*See* R. 394. When asked to clarify his opinion, Dr. Sternes agreed that Plaintiff's concentration abilities were sufficient to permit him to "function day in and day out in a job." R. 403. Aside from the GAF scores, Plaintiff does not cite any medical opinion or evidence indicating that Plaintiff's concentration limitation is more extreme than was found by Dr. Sternes.

With respect to Plaintiff having been treated through medication, Dr. Sternes' statement suggesting the contrary was made concurrently with testimony indicating that Dr. Sternes was aware Plaintiff had taken mental health medication. *See* R. 384 (Dr. Sternes testifying as to a medical record reflecting Plaintiff was taking Lexapro, Klonopin, and Seroquel in November 2007). Of note, the record reflects statements by Plaintiff that he was not taking mental health medication during part of the relevant time period. *See*, *e.g.*, R. 201 (Plaintiff stated to examining psychologist in 2006 that he was not taking any medication for his anxiety and panic attacks or receiving care for any emotional problems). Regardless, at the conclusion of Dr. Sternes' testimony, Plaintiff's attorney asked Dr. Sternes to clarify his opinion with respect to Plaintiff's ability to concentrate. Dr. Sternes was indisputably aware of Plaintiff's medication treatment at that point but did not retract any previous testimony, and his further testimony did not differ substantially as to the nature of Plaintiff's condition and its severity (both as currently treated and as potentially treatable). *See* R. 395-96, 398-406. Dr. Sternes' testimony on these particular issues was not so flawed or uninformed as to invalidate the ALJ's conclusion that Dr. Sternes' opinion was consistent with the relevant records and evidence.

IV.

In summary, Plaintiff challenges the ALJ's decision to give substantial weight to Dr. Sternes' opinion, and, in particular, Plaintiff asserts that Dr. Sternes' testimony regarding Plaintiff's ability to concentrate was not supported by substantial evidence. *Id.* *See* Pl.'s Br. at 16, 18-19. However, as indicated above, "this is not a case in which the record evidence overwhelmingly contradicts the ALJ's opinion or in which the ALJ neglected to discuss material evidence that favors the claimant." *See Osborn v. Astrue*, 406 F. App'x 296, 301 (10th Cir. 2010). Under these circumstances, the Court may not reweigh the evidence that was before the ALJ. *See id.* (upholding finding of medical improvement where ALJ gave "great weight" to testimony of impartial ME although other evidence supported claimant's position).

Beyond the GAF scores, which were adequately addressed by both Dr. Sternes and the ALJ, Plaintiff fails to point to any physician's opinion or medical evidence that should be accepted over the opinion of Dr. Sternes and the other evidence discussed by the ALJ. Dr. Sternes "did offer his own opinion on the claimant's condition. That opinion, however, did not differ from the medical reports." *See Perales*, 402 U.S. at 408. For example, Plaintiff's medical treatment records consistently reflect that Plaintiff had adequate ability to interact and cooperate with others, was compliant with his medication, and had appropriate affect and orientation with no delusions and with intact thoughts. *See, e.g.*, R. 202-04, 288, 291, 293, 562, 572, 574, 576, 583, 601, 617, 618. Plaintiff does not challenge the ALJ's step-three conclusion that Plaintiff "is able to maintain significant relationships with his family," "is able to perform a wide range of simple

15

routine tasks," and does not show that he "is unable to function independently outside of the home." *See* R. 344-45. Because Dr. Sternes' opinion is consistent with the medical evidence, is not "overwhelmed by other evidence in the record," and does not "constitute[] a mere conclusion," Plaintiff has not shown that the ALJ's RFC determination, as informed by the ALJ's giving substantial weight to Dr. Sternes' oral testimony, is not supported by substantial evidence. *See* R. 345-50; *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal quotation marks omitted).

Nor did the ALJ err in explaining her assignment of substantial weight to Dr. Sternes' opinion. "[T]he [ALJ] must explain in the decision the weight given to the opinions of . . . nonexamining sources who do not work for [the SSA]." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); *accord* SR 96-6p, 1996 WL 374180, at *2; *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Here, the ALJ evaluated Dr. Sternes' opinion and explained the "substantial" weight assigned thereto, stating: "As an impartial licensed psychologist, the findings and opinion of Dr. Sternes have been given substantial weight and consideration as consistent with the treating medical records, objective medical evidence, and overall longitudinal record." R. 350.[4]

---

[4] The ALJ did not err by "picking and choosing" from statements made by Dr. Sternes, as contended by Plaintiff. *See* Pl.'s Reply at 1 (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)); Pl.'s Br. at 18 (same). As a threshold matter, *Hardman* holds that ALJ may not pick and choose "among medical reports, using portions of evidence favorable to his position while ignoring other evidence"; the decision does not specifically extend this rule to how an ALJ must evaluate the testimony of an impartial ME, which is itself based upon a review of such medical reports and is designed to provide an explanation and "an opinion" of those reports. *See Hardman*, 362 F.3d at 681; *Perales*, 402 U.S. at 408; 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii). Regardless, Plaintiff does not argue that the ALJ ignored opinions by Dr. Sternes that

Having considered the relevant evidence, together with the testimony of two experts, the ALJ reasonably determined that Plaintiff's ability to work was conditioned upon the presence of specific nonexertional limitations regarding simplicity of instructions, interaction with others, and flexibility in pace and that Plaintiff could sustain the concentration necessary for unskilled work. *See* R. 345-50; 20 C.F.R. §§ 404.1569a(c)(1)(i)-(iii), 416.969a(c)(1)(i)-(iii). The record and decision reflect that the ALJ sufficiently evaluated Dr. Sternes' testimony in light of the supporting evidence in the case record and the explanations provided by Dr. Sternes. *See* R. 348-50; 20 C.F.R. § 404.1527(c), (e); *id.* § 416.927(c), (e). Plaintiff's attorney had the opportunity to fully cross-examine Dr. Sternes on the how-and-why of his opinions, and that questioning was expressly considered by the ALJ in reaching the RFC determination. *See* R. 349, 350. Because the ALJ's RFC determination is supported by substantial evidence and resulted from correct application of legal principles, reversal is not warranted.

## RECOMMENDATION

Having reviewed the record, the transcripts, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

---

indicated greater limitations than ultimately found by the ALJ. Rather, Plaintiff criticizes the ALJ's failure to note in her written decision Dr. Sternes' alleged unawareness that Plaintiff already was receiving medication treatment. *See* Pl.'s Br. at 18. Such argument is not that the ALJ selectively cited medical evidence but that Dr. Sternes misapprehended the medical evidence—which is addressed above.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by January 30, 2015. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 16th day of January, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE